1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| William Stewart,<br><br>                    Plaintiff,<br><br>     v.<br><br>The Boeing Company and Does<br>1-50,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CV 12-05621-RSWL-AGR

**ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT** [43]

     Currently before the Court is Defendant The Boeing Company's ("Defendant") Motion for Summary Judgment, or Alternatively, Partial Summary Judgment [43].  The Court, having reviewed all papers submitted pertaining to this Motion, **NOW FINDS AND RULES AS FOLLOWS:** The Court **GRANTS** Defendant's Motion for Summary Judgment in its entirety.

# I. BACKGROUND

Plaintiff William Stewart ("Plaintiff") was employed with Defendant beginning in 1985.  Miller Decl. ¶ 5.  At the time of his absence and termination, Plaintiff was assigned to the assembly of the C-17 military transport aircraft at Defendant's facility in Long Beach, California.  Def.'s Statement of Uncontroverted Facts and Conclusions of Law ("SUF") # 1.  He was a member of the United Aerospace Workers (UAW) Union, Local 148 ("Union"), and his employment was subject to the terms of a collective bargaining agreement ("CBA").  SUF # 2.

Defendant has a set of written procedures that govern how to apply for and receive approval of requested Medical Leaves of Absence ("MLOA").  Id. at ## 6, 7.  In addition, Defendant employees who are union members are subject to a written CBA that also contains procedures and requirements for taking MLOA.  Id.  Plaintiff has testified that he was very familiar with these procedures, having availed himself of them numerous times in the past.  Id. at # 6.

During his employment with Defendant, Plaintiff suffered from physical and psychological issues for which he took several medical leaves of absence.  Compl. ¶ 6, SUF #6.  On or about January 2010, Plaintiff went out on a MLOA, which was initially approved through February 12, 2010.  SUF # 10; Compl. ¶¶ 7-8.  He later, upon request, submitted updated

medical information to further extend his MLOA until March 31, 2010.  SUF # 10.

On March 12, 2010 and March 18, 2010, Defendant and Defendant's Leave Administrator, Aetna, sent Plaintiff letters to his home address informing him that his approved medical leave would be expiring at the end of March 2010.  Id. at # 11.  The letters requested that he provide additional or supplemental documentation from his health care providers in order to extend his leave beyond March 31, 2010.  Id.  Plaintiff brought the medical form to his doctor to fill out and had it faxed to Defendant and Aetna on or about March 25, 2010, but the faxed medical form was incomplete.  Id. at ## 11, 12.

On March 29, 2010, Defendant and Aetna sent another letter to Plaintiff's residence, informing him that 1) his prior medical submission on March 25, 2010 was incomplete, and 2) a completed form needed to be returned no later than April 8, 2010.  Id. at # 13. Neither Defendant nor Aetna received the requested information.  Id. at # 14.

On April 14, 2010, Nancy Miller ("Ms. Miller"), who was the assigned "leave of absence" person in Defendant's human resources ("HR") department, contacted Donnell Harding ("Ms. Harding"), who was the appointed MLOA union representative for Plaintiff.  Id. at # 15.  Ms. Miller informed Ms. Harding that Plaintiff's MLOA expired and that Defendant tried to

contact and communicate with him without success.  <u>Id.</u>
In addition, Ms. Miller sent a letter addressed to
Plaintiff at his home, dated April 20, 2010, notifying
him that he was "AWOL" and that he needed to contact
Defendant's Leave of Absence office no later than April
27, 2010 to review his current employment status[1].  <u>Id.</u>
at # 16.

Further, on April 28, 2010, Ms. Harding spoke with
Plaintiff and told him that it was important that he
contact Ms. Miller that day.  <u>Id.</u> at # 18.  Plaintiff
allegedly said, "No!" and subsequently became difficult
to communicate with and Ms. Harding ended the
conversation.  <u>Id.</u>  On May 3, 2010, Ms. Miller sent a
letter to Plaintiff informing him of his termination
from Defendant, based on "failing to adhere to
[company] policies and procedures governing attendance
and leaves of absence."[2]  <u>Id.</u> at # 21.  The letter

---

[1] The April 20, 2010 letter was sent via certified mail, and
three attempts were made by the U.S. Postal Service to deliver it
to Plaintiff's home address, but the letter was never picked up
and it was returned to Defendant on May 14, 2010.  SUF # 17.

[2] The termination notice letter was sent to Plaintiff's home
address via certified mail.  The U.S. Postal Service made three
unsuccessful attempts to deliver it, but Plaintiff never picked
up the letter and it was returned to Defendant on June 6, 2010.
SUF # 21.

indicated that Plaintiff's termination was effective
April 1, 2010, in accordance with Defendant's policies
that termination of employment would be retroactive to
the leave expiration date.  Miller Decl., Ex. A.  On
May 28, 2010, Plaintiff called into Defendant's "Total
Access" department where his termination and final
paycheck were discussed.  SUF # 23.  Plaintiff
indicates that this was the first time he was fully
aware that he had been terminated by Defendant.  Id.

In September 2010, Plaintiff applied for Social
Security Disability Insurance ("SSDI") benefits,
claiming that he had been disabled and was unable to
work in any capacity since going on MLOA in January
2010.  Id. at # 28.  On March 17, 2012, after a hearing
before an administrative law judge, the Social Security
Administration issued a written decision determining
that Plaintiff had been "disabled" since January 7,
2010.  Id. at # 32.  As a result, Plaintiff has been
receiving $1,900 a month in SSDI benefits.  Id.

On February 2011, Plaintiff returned to Defendant's
facilities and claimed that he was "cleared" by his
doctors to return to work.  Id. at #35.  Plaintiff was
reminded that he had been terminated as of April 1,
2010, and was told to leave, which he did.  Id.

Almost two years after his termination from
Defendant, on January 2012, Plaintiff filed charges
with the California Department of Fair Employment and
Housing ("DFEH") against Defendant based on alleged

disability and age discrimination and retaliation.  <u>Id.</u>
at # 40.  That same day, Plaintiff received his right-
to-sue letter, and the DFEH closed the matter.  <u>Id.</u>

On May 4, 2012, Plaintiff filed the instant Action
against Defendant under the California Fair Employment
and Housing Act ("FEHA"), alleging (1) unlawful
discrimination based on disability, (2) failure to
accommodate, (3) unlawful termination in violation of
public policy, and (4) unlawful retaliation [1].
Plaintiff claims that because of Defendant's unlawful
conduct, he has suffered "extreme and severe mental
anguish, humiliation, emotional distress**,** loss of
enjoyment of life, nervousness, tension, anxiety and
depression."  Compl. ¶ 24.  The Action was removed to
this Court on June 28, 2012 [1].

On May 15, 2013, Felahy Law Group, which
represented Plaintiff, filed a Motion to Withdraw as
Attorney [26], which this Court granted [36].

On October 29, 2013, Defendant filed the present
Motion for Summary Judgment as to all of Plaintiff's
causes of action [43].

On November 14, 2013, Plaintiff filed a Request for
Extension of Time to File an Opposition [47], which
this Court granted [51].  The Court ordered Plaintiff
to file his Opposition on November 22, 2013 and ordered
Defendant to file its Reply on December 4, 2013 [51].
The Motion was taken under submission on December 5,
2013 [51].

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine issue" exists if the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the opposing party.  <u>Twentieth Century-Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d 1327, 1329 (9th Cir. 1983).

Where the moving party does not have the burden of proof at trial on a dispositive issue, the moving party may meet its burden for summary judgment by showing an "absence of evidence" to support the non-moving party's case.  <u>Celotex v. Catrett</u>, 477 U.S. 317, 325 (1986).

The non-moving party, on the other hand, is required by Fed. R. Civ. P. 56(c) to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial.  <u>Id.</u> at 324.  Conclusory allegations unsupported by factual allegations are insufficient to create a triable issue of fact so as to preclude summary judgment.  <u>Hansen v. United States</u>, 7 F.3d 137, 138 (9th Cir. 1993).  A non-moving party who has the burden of proof at trial must

present enough evidence that a "fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." Anderson, 477 U.S. at 255.

In ruling on a motion for summary judgment, the Court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. Anderson, 477 U.S. at 255.

## III. ANALYSIS

### A.   Plaintiff Failed to Exhaust His Administrative Remedies Before Filing This Lawsuit

"In order to bring a civil action under FEHA, the aggrieved person must exhaust the administrative remedies provided by law." Rodriguez v. Airborne Express, 265 F.3d 890, 896 (9th Cir. 2001) (citing Yurick v. Superior Court, 209 Cal. App. 3d 1116, 1121, (1989)).  Exhaustion in this context requires filing a written charge with DFEH within one year of the alleged unlawful employment discrimination, and obtaining notice from DFEH of the right to sue.  Rodriguez, 265 F.3d at 896.  The California Supreme Court has held that the FEHA statute of limitations begins to run when an alleged adverse employment action acquires some degree of permanence or finality.  See Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1059 (2005).

Exhaustion of these procedures is mandatory, and a FEHA claim may be dismissed for failure to exhaust administrative remedies.  Parks v. Board of Trustees of California State University, No. 1:09-CV-1314 AWI GSA,

2010 WL 455394, at *4 (E.D. Cal. Feb. 3, 2010); See
also Dotson v. County of Kern, No. 1:09–CV–1325 AWI
GSA, 2010 WL 4878802, at *5 (E.D. Cal. Nov. 17, 2010)
(granting summary judgment on FEHA claims for race and
gender discrimination where plaintiff waited between
14-15 months to file an administrative charge from the
last date of an employer's alleged inappropriate
conduct).

Here, Defendant argues that Plaintiff failed to
timely file his administrative complaint with the DFEH
within one year of the date the alleged unlawful
practice occurred.  Specifically, Defendant asserts
that Plaintiff knew that he had been terminated as of
May 28, 2010, but that he waited 22 months before
filing his DFEH claim on January 23, 2012, well past
the one-year cut-off.  Thus, Defendant argues that
Plaintiff's FEHA claims for unlawful discrimination
based on disability, failure to accommodate, unlawful
termination, and unlawful retaliation are time-barred.

The Court finds Defendant's argument persuasive.
In this case, the alleged adverse employment action was
Plaintiff's termination by Defendant.  Although
Defendant notified Plaintiff by way of a May 3, 2010
letter[3] that he was terminated, effective on April 1,

---

[3] Defendant sent the letter via certified mail to Plaintiff's
home address (at which Plaintiff admits he was residing at the time).
Further, the U.S. Postal Service made three attempts to deliver said

2010 (Miller Decl. ¶ 20, Ex. L), Plaintiff claims that he learned he had been terminated from his employment on May 28, 2010, after he called Defendant's "Total Access" department. Id. at ¶ 22, Ex. N; Deposition of William Stewart ("Stewart Depo.") 40:9-42:11, 97:13-17; 103:20-25. Thus, it appears that Plaintiff knew that he had been fired since at least May 28, 2010. Plaintiff had one year from that date – until May 28, 2011 – to file an administrative complaint with the DFEH. See Rodriquez, 265 F.3d at 896; See Yanowitz, 36 Cal. 4th at 1059 (the FEHA statute of limitations begins to run when the alleged employment action acquires some degree of permanence or finality). Because Plaintiff filed his administrative complaint with the DFEH on January 2012 – almost two years after he first learned of his termination – the Court finds that Plaintiff failed to timely exhaust his administrative remedies. See Rodriquez, 265 F.3d at 896. Failure to timely exhaust administrative remedies is grounds for granting Defendant's Motion. Dotson, 2010 WL 4878802, at *5. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment as to all of Plaintiff's claims.

However, even assuming, *arguendo*, that Plaintiff

---

letter, but Plaintiff never picked up the letter and it was returned to Defendant on June 6, 2010. Miller Decl. ¶ 20, Ex. L; Stewart Depo., 146:5-7.

timely exhausted his administrative remedies, the Court **GRANTS** Defendant's Motion in its entirety because each of Plaintiff's claims fail as a matter of law.

### B.  <u>Unlawful Discrimination and Unlawful Retaliation Claims</u>

In his Complaint, Plaintiff argues that Defendant unlawfully terminated him because of his disability as well as in retaliation for lodging complaints of discrimination and harassment with the DFEH and for requesting accommodations and medical leave from work to seek treatment.  Compl. ¶¶ 21-22, 48.

The California Supreme Court has adopted the tripartite burden-shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04, (1973), to analyze disparate treatment and retaliation claims.  <u>Lawler v. Montblanc North America, LLC</u>, 704 F.3d 1235, 1242-44 (9th Cir. 2013).  Under <u>McDonnell Douglas</u>, the plaintiff has the initial burden of establishing a prima facie case of discrimination or retaliation.  <u>Id.</u>  Once a prima facie case is shown, the burden shifts to the defendant to show that the adverse employment action was taken for a legitimate, nondiscriminatory reason.  <u>Id.</u>  If defendant meets this burden, the plaintiff must demonstrate that the proffered reason is mere pretext for discrimination. <u>Id.</u>

However, when an employer moves for summary judgment as to a plaintiff's FEHA claims, the employer

bears the initial burden.  Lawler, 704 F.3d at 1242 (citing Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 745 (9th Cir. 2011) (quotation omitted)).  "Thus, [t]o prevail on summary judgment, [the employer is] required to show either that (1) plaintiff could not establish one of the elements of [the] FEHA claim or (2) there was a legitimate, nondiscriminatory reason for its decision to terminate plaintiff's employment."  Id. (quotation omitted) (alterations in original).  If the employer meets its burden, the plaintiff must demonstrate either "that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing."  Lucent Technologies, 642 F.3d at 746.  The plaintiff can satisfy his burden by "produc[ing] substantial responsive evidence that the employer's showing was untrue or pretextual."  Id.  A "plaintiff may establish pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Id. (citing Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998)).  If a plaintiff uses circumstantial evidence to satisfy this burden, such evidence must be "specific" and "substantial."  Id. (citing Godwin, 150 F.3d at 1221).

Here, the Court finds that Defendant provides sufficient evidence of a legitimate, non-discriminatory

12

reason for its decision to terminate Plaintiff - that Plaintiff "fail[ed] to adhere to [company] policies and procedures governing attendance and leaves of absence." Miller Decl., Ex. L.  Defendant's company policies and procedures require employees to (1) submit requested medical documentation to Defendant's Leave Administrator, Aetna, within 15 days of the request and (2) to contact Aetna prior to the expiration of an approved MLOA to inform Defendant whether the employee plans to return to work or extend his leave.  Id. at ¶ 7, Ex. A.  The written policy further advises employees that failure to comply with these rules and policies could result in potential termination, and that failure of an employee to contact the company within three days after expiration of the approved leave would result in termination.  Id.

Defendant provides sufficient evidence that it attempted to contact Plaintiff several times with regard to his medical paperwork, and only made the decision to terminate Plaintiff when it did not receive the required paperwork.  Specifically, Defendant provides evidence that it sent Plaintiff two letters informing him that he needed to send an updated, completed Medical Certification Form (Id., Exs. E, F), which was necessary to extend Plaintiff's MLOA beyond March 31, 2010.  Id. at ¶ 13.  Although Plaintiff sent in a certification form, that form was incomplete.  Id. at ¶¶ 11-12.  Thereafter, Defendant sent Plaintiff a

follow up letter on March 29, 2010 requesting a completed medical certification form by April 8, 2010, but Plaintiff failed to provide the completed form. Id. at ¶ 13.  Defendant and Plaintiff's Union representative, Ms. Harding, attempted to contact Plaintiff through telephone calls and letters via certified mail to encourage Plaintiff to contact Defendant regarding his MLOA and medical certification form status.  Id. at ¶¶ 14, 15, 16, Exs. H, I, J. However, Plaintiff did not contact Defendant.  Id. at ¶¶ 13-16.  Thus, the evidence provided by Defendant shows that Defendant informed Plaintiff at least two times *prior* to the expiration of his medical leave that he needed to send in an updated and completed medical certification form.  The evidence also shows that Defendant followed up with Plaintiff to inform him that his medical paperwork was incomplete and even contacted Plaintiff's union representative to follow up on the status of his paperwork, but that it did not receive a response from Plaintiff.  Id. at ¶¶ 12-14.  In accordance with its company policies, Defendant made the decision to terminate Plaintiff for his failure to comply with Defendant's written agreements, policies, and procedures governing attendance and leaves of absence.  Id. at ¶¶ 7, 19, Ex. A.  Defendant made this decision only after it made several failed attempts to contact Plaintiff.  Id. at ¶¶ 17-18, Ex. K.  As such, it appears that Defendant's decision to terminate

1  Plaintiff was not based on any discriminatory or
2  retaliatory motivation, but was based only on
3  Plaintiff's failure to submit the required
4  documentation to extend his MLOA and his failure to
5  communicate with Defendant regarding his leave status.
6  Accordingly, the Court finds that Defendant has
7  provided sufficient evidence of a legitimate, non-
8  discriminatory reason for its decision to terminate
9  Plaintiff.

10      Because Defendant provides a legitimate, non-
11  discriminatory reason for its employment decision, the
12  burden shifts to Plaintiff to produce substantial
13  responsive evidence that the employer's showing was
14  untrue or pretextual.  See Lucent Technologies, 642
15  F.3d at 746.  Further, because Plaintiff fails to
16  provide direct evidence of a discriminatory motive,
17  Plaintiff must provide "specific and substantial"
18  evidence that Defendant's proffered reason was
19  pretextual.  See Cellini, 51 F. Supp. 2d at 1035-36;
20  see also Lucent Technologies, 642 F.3d at 746.
21  However, Plaintiff fails to do so here.  In fact,
22  Plaintiff fails to provide, through his Opposition or
23  any supporting documentation, any evidence whatsoever,
24  much less "specific and substantial evidence," that
25  Defendant's decision to terminate Plaintiff was because
26  of his disability or the filing of his DFEH complaints.
27  Rather, Plaintiff merely makes vague and conclusory
28  allegations that Defendant's decision to terminate him

was based on an attempt to cover up Plaintiff's charges
for "Battery as violence in the workplace,"
"Intentional Infliction of Emotional Distress" and
"Intellectual Property Theft."  <u>See</u> Pl.'s Opp'n.
Plaintiff also alleges in his Opposition that he was
never informed that there was anything wrong with his
MLOA paperwork during his Workers' Compensation
deposition hearing (held on March 29, 2010) or by his
supervisor, Bryan Smith, with whom he had visited on
April 22, 2010.  However, Plaintiff does not assert
that Bryan Smith or anyone at his Workers' Compensation
deposition hearing even knew that there was anything
wrong with his MLOA paperwork.  Further, while
Plaintiff argues that he should have been personally
called or e-mailed that his medical paperwork was
incomplete, the evidence shows that his union
representative, Ms. Harding, called him to inform him
that it was urgent that he call Ms. Miller regarding
the status of his medical leave.  Aside from these
vague allegations and arguments, Plaintiff fails to
provide "specific and substantial" evidence to show
that Defendant's decision was pretextual.  Because
Defendant has articulated a legitimate, non-
discriminatory reason for terminating Plaintiff, and
Plaintiff fails to provide "specific and substantial"
evidence that Defendant's proffered reason was
pretextual, the Court **GRANTS** Defendant's Motion as to
Plaintiff's causes of action for disability

1  discrimination and unlawful retaliation.

2      **C.  Failure to Accommodate Claim**

3      Pursuant to California Government Code section

4  12940(m), it is unlawful, and separately actionable

5  under FEHA, for an employer to fail to make reasonable

6  accommodation for the known physical or mental

7  disability of an applicant or employee, unless the

8  accommodation would cause undue hardship to the

9  employer.  Holtzclaw v. Certainteed Corp., 795 F. Supp.

10  2d 996, 1018 (E.D. Cal. 2011) (citing Raine v. City of

11  Burbank, 135 Cal. App. 4th 1215, 1222–23 (2006)).  The

12  employee has "the burden of giving the employer notice

13  of the disability." Id. (citing Raine, 135 Cal. App.

14  4th at 1222).  Once notice is given, the employer must

15  take affirmative steps and the parties must engage in

16  an interactive process in order to attempt to fashion a

17  reasonable accommodation.  Id.

18      Further, summary judgment in favor of an employer

19  on a reasonable accommodation claim may granted where

20  the employer shows:

21      (1) reasonable accommodation was offered and

22      refused; (2) there simply was no vacant position

23      within the employer's organization for which the

24      disabled employee was qualified and which the

25      disabled employee was capable of performing with

26      or without accommodation; or (3) the employer did

27      everything in its power to find a reasonable

28      accommodation, but the informal interactive

1    process broke down because the employee failed to

2    engage in discussions in good faith.

3  Lucent Technologies, Inc., 642 F.3d at 744.

4      Here, Plaintiff submitted a request for a MLOA on

5  or about January 8, 2010, which was initially approved

6  through February 12, 2010, and extended until March 31,

7  2010.  Miller Decl. ¶ 9, Exs. C and D.  Further,

8  Defendant had known that during the course of

9  Plaintiff's employment, Plaintiff had taken over twenty

10  different leaves of absence, mostly for medical

11  reasons, which include conditions that rendered him

12  unable to concentrate while on the job.  Miller Decl. ¶

13  6.  As such, the Court finds that Plaintiff gave

14  Defendant notice of his disability.

15      Because Plaintiff gave notice to Defendant of his

16  disability, Defendant must show that 1) reasonable

17  accommodation was offered and refused, 2) there was no

18  vacant position for which Plaintiff was qualified and

19  was capable of performing with or without

20  accommodation, or 3) Defendant did everything in its

21  power to find a reasonable accommodation, but the

22  informal interactive process broke down because the

23  employee failed to engage in discussions in good faith.

24  Lucent Technologies, Inc., 642 F.3d at 744.  Here,

25  there is no evidence that a reasonable accommodation

26  was offered and refused, and there is no discussion as

27  to whether there was a vacant position for which

28  Plaintiff was qualified and capable of performing with

1  or without accommodation.  Notwithstanding, the

2  undisputed evidence establishes that the informal

3  interactive process broke down because of Plaintiff's

4  failure to engage in good faith discussions with

5  Defendant.  See Davis v. Vitamin World, Inc., No. EDCV

6  11-00367 ODW (Opx), 2011 WL 5865614, at *7 (C.D. Cal.

7  Nov. 21, 2011).  As discussed above, Defendant provides

8  evidence that it tried to communicate with Plaintiff

9  several times to determine whether he needed to extend

10  his MLOA; i.e., sending Plaintiff two letters

11  requesting that he submit updated medical paperwork to

12  extend his MLOA past March 2010.  Miller Decl. ¶¶ 10,

13  Exs. E, F.  Defendant also tried to inform Plaintiff

14  that his medical submission was incomplete.  Miller

15  Decl. ¶ 12, Ex. G.  Defendant also sent Plaintiff a

16  letter notifying him that he was "AWOL" and that he

17  immediately needed to contact Defendant's Leave of

18  Absence office to review his current employment status.

19  Miller Decl. ¶ 15, Ex. I.  After Plaintiff did not

20  respond, Defendant attempted to contact Plaintiff

21  through his appointed MLOA union representative, Ms.

22  Harding, who informed Plaintiff that he needed to

23  contact Defendant.  Miller Decl. ¶ 14, Ex. J.  However,

24  Ms. Harding indicates that Plaintiff refused and then

25  became very difficult to speak with.  Id.  Further,

26  there is no evidence that Plaintiff or his health care

27  providers contacted Defendant for over ten months (from

28  April 2010 to February 2011) to discuss or update his

19

1  medical condition or ask for any accommodations to
2  either extend his leave or to return to work.

3      "It is the responsibility of both sides to keep
4  communications open and neither side has the right to
5  obstruct the process." <u>Davis</u>, 2011 WL 5865614, at *8.
6  In this respect, Plaintiff utterly fails to explain his
7  failure to communicate with Defendant. <u>See</u> <u>id.</u>
8  Accordingly, the Court finds that Defendant did
9  everything in its power to find a reasonable
10  accommodation, but the informal interactive process
11  broke down because Plaintiff failed to engage in
12  discussions in good faith.  Thus, as a matter of law,
13  the Court finds that the undisputed evidence cannot
14  support a finding that Defendant failed to provide
15  Plaintiff with a reasonable accommodation, and summary
16  judgment as to Plaintiff's claim for failure to
17  accommodate is **GRANTED**.

18      **D.  <u>Unlawful Termination Claim</u>**

19      "In order to sustain a claim of wrongful discharge
20  in violation of fundamental public policy, [a
21  plaintiff] must prove that his dismissal violated a
22  policy that is (1) fundamental, (2) beneficial for the
23  public, and (3) embodied in a statute or constitutional
24  provision." <u>Nielsen v. Trofholz Technologies, Inc.</u>,
25  750 F. Supp. 2d 1157, 1171 (E.D. Cal. 2010) (citing
26  <u>Turner v. Anheuser−Busch, Inc.</u>, 7 Cal. 4th 1238, 1256,
27  (1994)).

28      Where courts have granted summary judgment as to

the plaintiff's FEHA claims, the courts have concluded that summary judgment is appropriate on the plaintiff's public policy claim.  <u>See</u> <u>Cavanaugh v. Unisource Woldwide, Inc.</u>, No. CIV-F-06-0119 AWI DLB, 2007 WL 915223, at *11 (E.D. Cal. Mar. 26, 2007) (granting summary judgment in favor of employer as to plaintiff's wrongful termination in violation of public policy claim, because it granted summary judgment in favor of employer on plaintiff's age discrimination claim).

Here, it appears that Plaintiff's claim for wrongful termination in violation of public policy is derivative of his statutory claims.  <u>See</u> <u>Nielsen</u>, 750 F. Supp. 2d at 1171 (citing <u>Jennings v. Marralle</u>, 8 Cal. 4th 121, 135–36, (1994) (finding no public policy claim against employers who have not violated the law)).  Because the Court grants summary judgment on Plaintiff's other claims, summary judgment should be similarly granted on Plaintiff's public policy claim. <u>See</u> <u>Nielsen</u>, 750 F. Supp. 2d at 1171; <u>see also</u> <u>Cavanaugh</u>, 2007 WL 915223, at *11.  Accordingly, the Court finds that Plaintiff's claim of unlawful termination in violation of public policy fails as a matter of law and **GRANTS** Defendant's Motion on that claim.

### IV. CONCLUSION

Based on the foregoing, the Court **GRANTS**

//

//

Defendant's Motion for Summary Judgment in its entirety.

**IT IS SO ORDERED.**

DATED: December 23, 2013

RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge